## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **VANCE BRADLEY** § | | **PLAINTIFF** |
| § | | |
| § | | |
| § | | |
| § | | |
| **v.** § | | **Civil No. 1:22-cv-355-HSO-BWR** |
| § | | |
| § | | |
| § | | |
| § | | |
| **UNITED STATES OF AMERICA** § | | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION [39] FOR SUMMARY JUDGMENT

In this negligence case brought against the United States of America under the Federal Tort Claims Act, Plaintiff Vance Bradley ("Plaintiff" or "Bradley") claims that a United States Postal Service ("USPS") employee negligently let a neighborhood dog off its chain, enabling it to run into the road in front of him while he was riding his motorcycle, causing a wreck.  Defendant the United States of America ("Defendant" or "Government") has filed a Motion [39] for Summary Judgment on grounds that the undisputed facts establish that any negligence by the United States Postal Service ("USPS") employee in letting the dog off its chain was neither the but-for nor legal cause of the accident.  Having considered the parties' arguments and drawn all reasonable inferences from the record in Plaintiff's favor, the Court concludes that genuine issues of material fact exist about causation and that Defendant's Motion [39] for Summary Judgment should be denied.

I. BACKGROUND

A.  Plaintiff's allegations in the Amended Complaint [7]

Plaintiff filed his initial Complaint [1] on December 30, 2022, followed by an Amended Complaint [7] on May 3, 2023, alleging a claim against Defendant for the negligence of its USPS employee under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et. seq.* Am. Compl. [7] at 1–2. He alleges that the "USPS employee released a dog that was being kept on a leash at or near [a] property located at 288 Deer Park Road," and that on April 5, 2020, the dog ran in front of him while he was riding his motorcycle on Deer Park Road, causing him to sustain severe injuries in a wreck. *Id.* at 2. The Amended Complaint [7] asserts that the USPS employee released the dog "[i]mmediately prior to Plaintiff riding down the road, without permission and unknown to the owners of the property." *Id.* Plaintiff further alleges that "[t]he USPS employee knew or should [have] known that releasing a leashed dog near a roadway was likely to cause disruption and wreck on the roadway." *Id.* at 3. In its Answer [17], Defendant raised as affirmative defenses, *inter alia*, contributory negligence and apportionment of fault under Miss. Code Ann. § 85-5-7. Ans. [17] at 3.

Defendant has moved for summary judgment, asserting that the summary judgment record cannot support the causation elements of Plaintiff's negligence claim. Mot. [39]; *see* Mem. [40] at 6–11. Plaintiff responds that genuine issues of material fact remain about causation. *See* Resp. [42].

2

B.  Summary judgment record

The summary judgment record reflects that the accident occurred on April 5, 2020, on Deer Park Road in a rural area in Leakesville, Mississippi. *See* Ex. [39-2] (a Google Earth image of the location of the accident). John Mergenschorer owned the dog—a Red Nosed Pit and Catahoula cur mix named Cash who weighed over one hundred pounds—involved in the accident. *See* Ex. [42-2] at 24–25; Ex. [42-1] at 24–25. Mr. Mergenschorer lived on and off "between" his mother's house and his girlfriend, Brooklyn Holton's trailer home, which was located at the end of a gravel road called Wayne Bradley Drive about half of a mile off Deer Park Road. *See* Ex. [42-2] at 24–25; Ex. [42-1] at 8–10, 40–41. Ms. Holton and Mr. Mergenschorer have two twin boys who live with Ms. Holton, and who were three years old at the time of the accident. *See* Ex. [42-1] at 8–9, 21–22. Mr. Mergenschorer got Cash for the twin boys, and he and Ms. Holton kept him at her residence. *See id.* at 24–25. Ms. Holton's mother, aunt, and grandfather, Wayne Bradley, Sr., also lived on Wayne Bradley Drive. *See id.* at 15, 18–19; Ex. [39-2]. Plaintiff, Vance Bradley, is Wayne Bradley Sr.'s nephew,[1] and he lived about a quarter mile down Deer Park Road from Wayne Bradley Drive. *See* Ex. [39-4] at 4, 7.

Ms. Holton normally kept Cash restrained in her yard using a "runner," a "thick cable" attached to two trees, which she connected to a chain that clipped onto Cash's collar. Ex. [42-1] at 26. This set up, she testified, gave Cash "a lot of

---

[1] When asked whether she is related to Plaintiff, Ms. Holton responded, "My mom was adopted but he considered him as his brother," and stated that Wayne Bradley, Sr., was her grandfather. Ex. [39-3] at 18.

circumference to run around." *Id*. Cash's collar was "like a dog hunting collar," and was made of material she described as "like a rubber plastic." *Id*. Ms. Holton and Mr. Mergenschorer obtained this collar because Cash had previously "slid out of" his collar "a few other times," but the most recent collar "held up with him." *See id*. at 28. When Cash would slip out of his collar, he would typically stay near Ms. Holton's trailer, *see id*., but he had also previously run into Deer Park Road, *see id*. at 33.

The USPS employee who released Cash, Betty Taylor, was a rural carrier whose route included Deer Park Road and Wayne Bradley Drive. Ex. [39-1] at 1. She stated in her Declaration [39-1] that, "[b]ased on [her] memory and a review of [her] time sheets and records, [she] was on duty Friday (April 3, 2020), but [she] did not work Saturday (April 4) or Sunday (April 5)." *Id*. Her "regular work shifts were Monday through Friday and did not include weekends." *Id*. She would often see Cash at Ms. Holton's address when delivering mail. *See id*. Sometimes he was "on a chain attached to a runner"; other times, he "was not on any type of restraint" but "was friendly and would come to greet [her] as [she] delivered mail." *Id*. Ms. Taylor's Declaration [39-1] states that Cash "often appeared to be hot and thirsty, and [she] did not see any water or food nearby," so she "made it [her] practice to save part of [her] lunch every day to give to [Cash]." *Id*. at 2.

Ms. Taylor described the circumstances leading up to the accident in her Declaration [39-1] as follows:

> Sometime in early March 2020, I noticed that the dog located at Wayne Bradley Drive was choking on its chain. The dog was on a heavy chain,

4

> with one end of the chain attached to a runner and the other end wrapped around his neck. This chain had become tangled around a stump and was choking him. When I saw this, I approached and unclipped the chain to keep the dog from choking.
>
> For the next several weeks as I delivered mail to this address, the dog remained off its chain and near the home at 62 Wayne Bradley Drive. Most days during March and early April 2020, the dog would continue to approach my mail truck to greet me as I pulled up.

*Id.*

Ms. Holton testified in her deposition that Cash's collar was cut, and although she could not remember when she first noticed that, she thought it was "a few days" before Plaintiff's accident. Ex. [42-1] at 26. She could tell someone had cut Cash's collar because she "could see the slice." *Id.* at 27. Between the time she noticed Cash's collar was cut and the date of the accident, she "was in the process of getting him another collar but [] just hadn't got it yet[,] so he was just roaming the yard." *Id.* at 25. There was not a fence around the properties on Wayne Bradley Drive, *see id.* at 29, and Cash "would flip out if [Ms. Holton] let him inside," *id.* at 25.

On April 5, 2020, Plaintiff rode his motorcycle to visit his uncle, Wayne Bradley, Sr., at his home located in front of Ms. Holton's home. *See* Ex. [39-4] at 6–11. As he was departing, Plaintiff revved his motorcycle, which made a loud noise, then drove down the gravel road and "eased" onto Deer Park Road. *See id.* at 11. Within "[s]econds," Cash ran in front of Plaintiff, causing him to fall off his motorcycle and hit his head on the pavement. *Id.* at 12–13. Plaintiff testified that, the next thing he knew, he "woke up in the hospital." *Id.* Cash died as a result of the accident. Ex. [39-3] at 15–16.

5

Prior to the accident, Ms. Holton had been outside with her two sons and Cash, who was still unrestrained. *See* Ex. [42-1] at 23. Her "son was laying on his belly," playing with Cash and "rubbing his belly." *Id.* at 33. It was not unusual for her to let Cash off his leash to play: Ms. Holton stated that she "would let him off and play with him for a while," typically between 30 minutes to an hour, "but [she'd] put him right back on." *Id.* at 33–34. On the day of the accident, however, she "didn't have another collar to put him on and that's why he was out." *Id.* Ms. Holton and her sons had been playing outside with Cash for about 30 minutes when Ms. Holton heard the motorcycle revving, which caused Cash to start barking and then run toward the road before she could catch him. *See id.* at 23, 33.

## II. DISCUSSION

A.  Relevant legal standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018) (quotation omitted). "All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in favor of the non-moving party." *Id.* (quotation omitted). The non-moving party cannot "avoid summary

judgment by presenting speculation, improbable inferences, or unsubstantiated assertions." *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015) (quotation omitted).  But the Court must "avoid credibility determinations and weighing of the evidence." *Dabbasi v. Motiva Enterprises, L.L.C.*, 107 F.4th 500, 505 (5th Cir. 2024) (quotation omitted).

The FTCA "waive[s] the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment." *Brownback v. King*, 592 U.S. 209, 212 (2021) (quotation omitted).  It "allows a plaintiff to bring certain state-law tort suits against the Federal Government" when "a similarly situated private employer would be liable under principles of vicarious liability." *Id.* at 210–11 (citing 28 U.S.C. § 2674; 28 U.S.C. § 1346(b)).  Claims are cognizable under the FTCA if they are:

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* at 212 (quoting *FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (quoting § 1346(b))). Here, "[s]ince the FTCA requires the Government's liability to be measured in accordance with the law of the state where the alleged act or omission occurred, [Plaintiff's] FTCA claims are" governed by Mississippi law. *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 287 (5th Cir. 2012).

Under Mississippi law, "[t]o succeed on a negligence claim, a plaintiff must show the following five elements: (1) duty, (2) breach, (3) cause in fact, (4) legal cause, and (5) damages." *Smith v. Minier*, No. 2021-CA-01284-COA, 2023 WL 2381726, at *4 (Miss. Ct. App. Mar. 7, 2023), *aff'd*, 380 So. 3d 889 (Miss. 2024). The cause-in-fact element requires the plaintiff to "show that 'but for the defendant's negligence, the injury would not have occurred.'" *Id.* at *5 (quoting parenthetically *Bennett v. Highland Park Apartments, LLC*, 170 So. 3d 522, 527 (Miss. Ct. App. 2014), *aff'd*, 170 So. 3d 450 (Miss. 2015)). "Stated differently, the cause in fact of an injury is that cause which, in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred." *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277 (Miss. 2007) (plurality opinion).

Not every intervening act between a defendant's negligent act and the plaintiff's injury breaks the chain of causation. *See Lift-All Co. v. Warner*, 943 So. 2d 12, 17–18 (Miss. 2006). An intervening cause can cut off the chain of causation and, therefore, relieve a defendant of liability when the intervening act rises to the level of a "superseding cause." *Id.* A "superseding cause" is a term of art that describes "an act of a third person or other force which by its intervention prevents the [defendant] from being liable," even if the defendant's negligence started the chain of causation leading to the plaintiff's injury. Restatement (Second) of Torts § 440 (Am. L. Inst. 1965) (June 2024 update); *see Lift-All Co.*, 943 So. 2d at 17–18.

8

When a defendant claims a superseding cause broke the chain of causation, "[t]he question is, did the facts constitute a succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the alleged wrong and the injury?" *Eckman v. Moore*, 876 So. 2d 975, 982 (Miss. 2004) (quotation omitted). This question "is a question of fact for the jury," not a legal question. *Lift-All Co.*, 943 So. 2d at 17 n.3. The Mississippi Supreme Court has emphasized that "the question of superseding intervening cause is so inextricably tied to causation, it is difficult to imagine a circumstance where such issue would not be one for the trier of fact," as opposed to an issue appropriate for summary judgment. *Smith v. Minier*, 380 So. 3d 889, 894 (Miss. 2024) (quotation omitted).

In considering whether an intervening act constitutes a superseding cause, one factor the Mississippi Supreme Court considers is whether the intervening act's "operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation." *Lift-All Co.*, 943 So. 2d at 18 (quoting *Southland Mgmt. Co. v. Brown ex rel. Brown,* 730 So. 2d 43, 46 (Miss. 1998) (citing Restatement (Second) of Torts § 440 (Am. L. Inst. 1965))). Importantly, "where the intervening cause of injury was foreseeable, it cannot super[s]ede the liability of the defendant." *Glover*, 968 So. 2d at 1279–80 (denying summary judgment on causation in a negligence suit against Jackson State University based on a rape by two fifteen-year-old boys participating

9

in a youth sports program on its campus because the university was "fully aware" of the boys' "violent tendencies" and could have foreseen their conduct).

The legal cause element of negligence focuses on whether "the damage is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act." *Id.* at 1277. This inquiry demands that the injury be "a reasonably foreseeable consequence of the defendant's negligence." *Id.* But "in satisfying the requirement of foreseeability, a plaintiff is not required to prove that the exact injury sustained by the plaintiff was foreseeable." *Id.* at 1278. "[I]t is enough to show that the plaintiff's injuries and damages fall within a particular kind or class of injury or harm which reasonably could be expected to flow from the defendant's negligence." *Id.*

"To illustrate" legal causation, the Mississippi Supreme Court has explained that "one who negligently drives an automobile reasonably should foresee that his or her negligence could be expected to cause certain kinds or categories of damages," including "traumatic injury, medical bills, lost wages, and pain and suffering." *Id.* But "if the accident also caused the plaintiff to miss a flight to London and, consequently, miss attending an auction and a once-in-a-lifetime opportunity to purchase a rare piece of art, the negligent automobile driver ordinarily would not be liable for such unforeseeable damages." *Id.* at 1279.

B.   The parties' arguments

Defendant argues in support of its Motion [39] that the record cannot support the causation elements of Plaintiff's negligence claim. *See* Mem. [40] at 6–10. Defendant's theory is that the chain of events between Ms. Taylor releasing Cash

10

and the accident injuring Plaintiff is too attenuated to support causation.  *See id.*  Defendant points out that Ms. Holton testified "that she noticed the dog was let off the chain at least a few days prior to the accident, not immediately before," as the Amended Complaint [7] has alleged.  *Id.* at 7 (citing Ex. [39-3] at 13).  Defendant also cites Ms. Taylor's statement that she let Cash off his chain a few weeks before the accident, *id.* (citing Ex. [39-1] at 2), and Plaintiff's "own testimony is that he doesn't know when the dog was released," though he thought he had seen him in Ms. Holton's yard on Friday, April 3, 2020, *id.* (citing Ex. [39-4] at 28–29).

Defendant further maintains that whether Ms. Taylor released Cash or not, he would have been loose at the time of the accident.  *Id.* at 10.  Defendant reasons that, because Ms. Holton would typically let Cash off his chain to play, and she and her sons were playing with him at the time of the accident, Cash would have been loose and run in front of Plaintiff's motorcycle regardless of Ms. Taylor's previous actions.  *See id.* at 5, 8–10 (citing Ex. [39-3] at 10, 16–17).

Defendant contends that there were "numerous breaks and intervening causes in the events leading up to the accident."  *Id.* at 10.  Those intervening causes included that Ms. Holton knew Cash was out of his collar at least two days before the accident but "made no efforts to restrain" him; and that, at the time of the accident, she "was playing with the dog and her children, a 'daily' activity at which time she would routinely let the dog off its chain anyway."  *Id.*

Plaintiff responds that "[o]n the date of the wreck, the dog's owner had no way to put him back on the leash/runner because" the collar had been cut and she

11

"did not have another collar to put on the dog." Resp. [42] at 3.  Plaintiff points to Ms. Holton's deposition testimony that she "would let [the dog] off and play with him for a while but [would] put him right back on, but [she] didn't have another collar to put him on and that's why he was out." *Id.* (quoting Ex. [42-1] at 33).

Plaintiff also argues that Cash required an expensive collar that Ms. Holton could not replace quickly, and that Defendant cannot escape liability because of Ms. Holton's inability to afford or quickly obtain a new, appropriate collar.  *See id.* at 4–6.  Plaintiff cites authorities establishing that the duty to mitigate damages is subject to a reasonableness standard, such that "where funds are necessary to meet the situation and the injured person is without [the] funds, he is excused from the effort." *Id.* at 5 (quoting *Tri–State Transit Co. v. Martin*, 179 So. 349, 350 (1938)).

In its Reply [43], Defendant reemphasizes its position that the accident occurred "*during* play time, when the dog was always off the leash anyway."  Reply [43] at 3 (emphasis in original).  Defendant further asserts that, "[n]owhere does Brooklyn Holton testify that a collar was too expensive for her, or that a collar was unavailable for some other reason," and that Plaintiff's assertions about why Ms. Holton did not replace Cash's collar are "speculative assumptions." *Id.* at 4.

C. <u>Genuine issues of material fact about causation preclude summary judgment</u>

Considering the summary judgment record in the light most favorable to Plaintiff, *see McClendon*, 892 F.3d at 781, genuine disputes of material fact exist as to the causation elements of his negligence claim.  Beginning with when Ms. Taylor released the dog, Ms. Holton's deposition testimony is that she first noticed Cash's collar was cut "a few days" before the accident occurred.  Ex. [39-3] at 13.  Although

12

Ms. Taylor states in her Declaration [39-1] that she unclipped the chain in early March 2020, which was several weeks before the accident, *see* Ex. [39-1] at 2, for summary judgment purposes, the Court must draw the inference in Plaintiff's favor that Ms. Taylor cut the collar only a few days before the accident, *see McClendon*, 892 F.3d at 781.  Defendant appears to concede that the record supports an inference that Ms. Taylor released Cash on Friday, April 3, *see* Mem. [40] at 10, the last day she was on duty delivering mail before the Sunday, April 5 accident, *see* Ex. [39-1] at 1.  Plaintiff, on the other hand, does not cite any evidence that Ms. Taylor cut Cash's collar on April 4 or 5.  *See* Resp. [42] at 3 ("At the time of the wreck at issue, the dog had been off his collar mere days." (citing Ex. [42-1] at 25) (Ms. Holton's deposition)).  The Court must therefore proceed under the assumption that Ms. Taylor cut Cash's collar only two days before the accident.

Turning to cause in fact, Defendant's theory that Cash would have been loose before the accident because he was always loose during play time, *see* Mem. [40] at 5, 8–10 (citing Ex. [39-3] at 10, 16–17); Reply [43] at 3 (citing Ex. [39-3] at 17), is essentially a superseding cause argument that Ms. Holton and her sons playing with Cash broke the chain of causation, thus relieving Defendant of liability, *see Lift-All Co.*, 943 So. 2d at 17.  This argument proves too much at the summary judgment stage.  Once Ms. Taylor cut Cash's collar, he was loose.  *See* Ex. [42-1] at 25 (discussing how, after his leash was cut, "he was just roaming the yard").  That he might later run into the road appears, for summary judgment purposes, "normal in view of the circumstances existing at the time" Ms. Taylor cut the collar, which

13

the Court must assume at this stage was only two days earlier. *Lift-All Co.*, 943 So. 2d at 18 (quotation omitted). Likewise, the Court cannot say at the summary judgment stage that Cash doing so two days later while Ms. Holton and her sons played with him in their yard, or Ms. Holton being "[un]able to get another collar yet for him" in that time, Ex. [42-1] at 25, was unforeseeable, *see Glover*, 968 So. 2d at 1279 ("[W]here the intervening cause of injury was foreseeable, it cannot super[s]ede the liability of the defendant.").

Defendant's play-time argument relies on the premise that Ms. Holton would have released Cash to play right before the accident because she and her sons happened to be playing with him at that time. This argument might be stronger if the summary judgment record made it clear that play time occurred at a regularly scheduled time. But drawing all inferences in Plaintiff's favor, as the Court must, once Ms. Taylor cut the dog loose two days prior, Ms. Holton could not choose whether to release him to play; "he was just roaming the yard." Ex. [42-1] at 25. She "didn't have another collar to put him on" even if she wanted play time to end, and as she testified, "that's why he was out." *Id.* at 33. For these reasons, Defendant's causation arguments are not appropriate for resolution at summary judgment. *See Smith*, 380 So. 3d at 894 (emphasizing that "the question of superseding intervening cause is so inextricably tied to causation, it is difficult to imagine a circumstance where such issue would not be one for the trier of fact," as opposed to an issue appropriate for summary judgment) (quotation omitted).

The Court likewise concludes that genuine issues of material fact remain concerning legal causation. The dog running into the road and causing an accident was—at least for summary judgment purposes—plainly of "the type, or within the classification, of damage" Ms. Taylor could "reasonably expect (or foresee) to result from" cutting him loose. *Glover*, 968 So. 2d at 1277. Defendant hardly argues otherwise. *See generally* Mem. [40]. Because genuine issues of material fact remain concerning causation, Defendant has not carried its burden of showing that it is "entitled to judgment as a matter of law" on Plaintiff's negligence claim. Fed. R. Civ. P. 56(a).

### III. CONCLUSION

To the extent that the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the outcome.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant the United States of America's Motion [39] for Summary Judgment is **DENIED**,

**SO ORDERED** this the 9th day of August, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE